**In re NEW YORK LIFE INSURANCE COMPANY AGENTS' CLASS CLAIMANTS SOLICITATION LITIGATION.**

**Civil Action No. MDL 1149.**

United States District Court,
E.D. Louisiana.

April 28, 1997.

### MEMORANDUM AND ORDER

SEAR, Chief Judge.

***Background:***

This multidistrict litigation is comprised of the following "core" cases:

*Lionel Smith v. Randy Ungar & Associates, Inc., et al.* E.D.LA., C.A. No. 2:96–3032

*Mark Duffy v. Randy Ungar & Associates, Inc., et al.* E.D.LA., C.A. No. 2:96–3033

*James L. McConathy v. Randy Ungar & Associates, Inc., et al.* E.D.LA., C.A. No. 2:97–0372

*Scott K. McGuire v. Randy Ungar & Associates, Inc., et al.* E.D.LA., C.A. No. 2:97–0373

*Allen Garcia v. Randy J. Ungar & Associates, Inc., et al.* E.D.LA., C.A. No. 2:97–0374

and the following "tag-along" case:

*Harold Mustin v. Randy Ungar & Associates, Inc., et al.* E.D.LA., C.A. No. 2:97–0657

Plaintiffs are self-employed, independent insurance agents who sell policies and products of New York Life Insurance Company. All plaintiffs are Louisiana citizens. Defendants are (1) Randy J. Ungar & Associates ("Ungar & Associates"), a New Orleans-based law firm; (2) Randy J. Ungar, a New Orleans-based attorney who is employed by and is the owner of Ungar & Associates; (3) Fleming, Hovencamp & Grayson, a Houston-based law firm; and (4) Debra Hayes, a Houston-based attorney who is employed by Fleming, Hovencamp & Grayson.

Plaintiffs allege that defendants acted in a joint venture to solicit NYLIC policyholders in order to persuade them to opt out of a class action lawsuit in New York entitled *Wilson, et al. v. New York Life Insurance Company, et al.*, and to join defendants' class action lawsuit against NYLIC in Louisiana. In furtherance of this joint venture to attract clients, defendants allegedly placed advertisements in newspapers, mailed letters directly to policy holders, employed telemarketers, and held solicitation meetings.

Plaintiffs claim that in the solicitations, defendants misrepresented facts to the public including statements that NYLIC insurance policies were "worthless" and that NYLIC and its agents defrauded the policy holders. As a result of defendants' actions, plaintiffs claim that numerous policy holders either cancelled their policies or failed to renew their policies. Plaintiffs also allege that their sales to potential clients were adversely affected as a result of defendants' conduct.

Defendants removed the actions to federal court based on diversity jurisdiction. 28 U.S.C. §§ 1332, 1441. On the face of the complaints, complete diversity is absent since all plaintiffs are Louisiana citizens and two of the defendants, Ungar & Associates and Randy J. Ungar, are also Louisiana citizens. However, defendants argue that the Louisiana defendants are improperly or fraudulently joined because plaintiffs' complaints fail to state a claim against these defendants upon which relief can be granted. Therefore, defendants argue that the court should disregard the citizenship of these defendants in determining diversity jurisdiction.

In each action, the respective plaintiff has filed a motion to remand and defendants have filed an opposition to remand.

### *Discussion:*

■ The removing party has the heavy burden of proving fraudulent joinder. *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 259 (5th Cir.1995). "The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* Since the citizenship of the parties is not in dispute, the sole question is whether there is a possibility that plaintiffs have set forth a valid cause of action against one of the Louisiana defendants. *See id.* In making this determination, the court evaluates the factual allegations in plaintiffs' state court pleadings in the light most favorable to plaintiffs, resolving all contested issues of substantive fact and all uncertainties of the relevant state law in favor of plaintiffs. *Id.* Ultimately, if there is arguably a reasonable basis for predicting that the state law might impose liability on a non-diverse defendant, then there is no fraudulent joinder. *Jernigan v. Ashland Oil,* Inc. 989 F.2d 812, 816 (5th Cir.1993).

■ In determining whether the federal courts have original jurisdiction, the court looks at the complaints as they existed at the time of removal. *Hook v. Morrison Milling, Co.*, 38 F.3d 776, 780 (5th Cir. 1994). However, the court is not limited to the face of plaintiffs' complaints, but rather, the court may consider the facts disclosed on the record as a whole in determining the propriety of removal or re-

mand. 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure:* Jurisdiction 2d § 3734.

### Choice of Law

Plaintiffs have asserted numerous tort claims against defendants under both Louisiana and Texas law. The first question I must resolve is which state's substantive law applies to these actions.

■ Federal courts sitting in diversity must apply the conflict-of-law rules of the state in which they are situated. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Cherokee Pump & Equipment Inc. v. Aurora Pump,* 38 F.3d 246, 250 (5th Cir.1994). Thus, I must apply Louisiana's statutory directives on choice-of-law to determine whether Louisiana or Texas substantive law applies to these cases.

The statutory choice-of-law directives for tort claims are addressed in La.C.C. Art. 3542, which provides:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of the conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

■ In determining which state's policies would be most seriously impaired, the domicile of the parties is a paramount question. *See Levy v. Jackson,* 612 So.2d 894, 897 (La.App. 4 Cir.1993). In this case, all plaintiffs are citizens of Louisiana. Louisiana clearly has a significant interest in protecting its citizens regardless of where the tort occurs. *Id.* In addition, two out of the four defendants are also Louisiana citizens. Overall, the citizenship of the parties weighs in favor of applying Louisiana law.

In regard to the conduct in question, the defendants' joint venture was allegedly designed to solicit Louisiana policy holders to join a class action in Louisiana. The defendants allegedly placed an advertisement in a Louisiana newspaper, mailed letters directly to Louisiana residents, called Louisiana policyholders, and held solicitation meetings in several Louisiana cities. Furthermore, plaintiffs allege that their damages occurred in Louisiana since sales to their Louisiana clientele were adversely affected.

The only contacts with Texas are that two of the defendants are Texas citizens and defendants' "direct marketing" center was located in Texas. At the direct marketing center, defendants prepared and mailed the solicitation letters and employed telemarketers to call and receive calls from the Louisiana policy holders.

Considering the two states, I find that the policies of Louisiana would be most seriously impaired if its laws were not applied—most of the parties are Louisiana citizens, the targets of the solicitations were Louisiana policy holders, and most of the conduct in question occurred in Louisiana. Accordingly, Louisiana substantive law applies to these actions.

Plaintiffs allege six causes of action under Louisiana law: (1) intentional tortious conduct, (2) defamation, (3) invasion of privacy, (4) misrepresentation, (5) tortious interference with contractual relations, and (6) abuse of rights. If defendants fail to prove that there is "absolutely no possibility" that plaintiffs will be able to establish a cause of action against the non-diverse defendants, then the actions must be remanded for lack of subject matter jurisdiction.

## Defamation

■ Plaintiffs claim that defendants are liable for defamation. This cause of action requires the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice; and (5) resulting injury. *Gugliuzza v. K.C.M.C., Inc.*, 606 So.2d 790, 791 (La.1992); *Cangelosi v. Schwegmann Brothers Giant Super Markets*, 390 So.2d 196, 198 (La.1980).

■ A defamatory communication is one that tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Gugliuzza*, 606 So.2d at 791; *Guilbeaux v. Times of Acadiana, Inc.*, 661 So.2d 1027, 1031 (La.App. 3rd Cir.1995). Accusations of criminal conduct are defamatory per se, and in such cases, proof of actual malice is not required. *Cangelosi*, 390 So.2d at 198; *Guilbeaux*, 661 So.2d at 1031. Finally, to be actionable, the defamatory words must be "of and concerning" the plaintiff or, directly or indirectly, cast a personal reflection on the plaintiff. *Guilbeaux*, 661 So.2d at 1031.

■ In their complaints, plaintiffs allege that defendants, through their telemarketers, advised callers and contacts that NYLIC agents had falsely represented facts, policy information, products, and services rendered. Plaintiffs further allege that these telemarketers advised callers and contacts that NYLIC agents had "defrauded" them.

I find that defendants' alleged statements that NYLIC agents committed misrepresentation and fraud are defamatory on their face. These accusations would adversely affect the agents' reputations in the community and deter clients and potential clients from dealing with them. They were communicated to third parties via the telemarketers. They are allegedly false and the element of malice is implied from the accusation of criminal conduct,

namely fraud. Lastly, plaintiffs allege that they were injured by the defamatory statements since their sales were adversely affected.

■ However, the parties dispute whether the defamatory statements were "of and concerning" plaintiffs. In particular, defendants argue that since plaintiffs were neither named nor identified, the statements could not be "of and concerning" plaintiffs and thus, plaintiffs cannot sustain a cause of action in defamation.

■ Generally, Louisiana courts recognize the principle that the defamatory words must refer to some ascertainable person, and that person must be the plaintiff. *Weatherall v. Department of Health and Human Resources*, 432 So.2d 988, 994 (La.App. 1st Cir.1983). However, many jurisdictions recognize a cause of action for "group defamation," that is, an individual may bring an action for defamation even though he or she is not specifically named if the defamatory words refer to a small, identifiable group to which he or she belongs.[1] Lawrence H. Eldredge, *The Law of Defamation* 54–55 (1978). When the defamed group is sufficiently small, the words may reasonably be understood to have personal reference and application to every member of the group, so that each member is defamed as an individual and can recover for defamation. Restatement (second) of Torts, § 564A Comment b (1977). *See also* William L. Prosser, Law of Torts, § 112, p 751 (1971). While there is no definite limit on the size of the group, most authorities agree that the group must consist of twenty-five or less members in order for the plaintiff to state a cause of action for group defamation. Restatement (second) of Torts § 564A Comment b; 52 A.L.R.4th 618; *see Gallodoro v. Times Picayune*, 1993 WL 330549, *1 (La.Dist.).

Plaintiffs cite *Perrilloux v. Batiste*, 357 So.2d 841 (La.App. 4th Cir.1978) for the

---

1. For a comprehensive list of jurisdictions and cases that recognize a cause of action for group defamation, *see* 52 A.L.R.4th 617, § 4 (1987) ("Defamation of Class or Group as

Actionable by Individual Member") and the Libel Defense Resource Center (LDRC) 50–State Survey 1996–97 on Medial Libel Law.

proposition that Louisiana courts recognize group defamation. However, that case is inapposite. In that case, during trial, a witness looked directly at the petitioner and said, "Your Honor, that whore I caught her in bed with my husband." The court held that, even though the petitioner's name was not mentioned, as one of a small group of women in the courtroom, to which by definition the defamation was addressed, the petitioner has by her allegation at least established a cause of action. *Id.* at 843.

In *Perrilloux,* the defamatory words, "that whore," were directed toward a specific individual. In contrast, defendants in this action allegedly told telephone callers and contacts that NYLIC agents defrauded them. These defamatory words refer to the entire "group" of NYLIC agents, not to a specific individual in the group. Based on this distinction, I find that *Perrilloux* is inapplicable to this case.

Defendants, on the other hand, cite *McGee v. Collins,* 156 La. 291, 100 So. 430 (1924) for the proposition that Louisiana does *not* recognize a cause of action for group defamation. In that case, the plaintiff was an insurance agent whose practice included advising individuals on how to change or cancel their existing life insurance contracts to get more benefits at less cost. *Id.* 100 So. at 431–432. The plaintiff claimed that he was defamed by various insurance companies and agents when they published an article that stated, "Any man who attempts by so-called audit or adjustment to change life insurance contracts in force is working solely for his own profit." *Id.* at 431.

The Court held that the plaintiff did not establish a cause of action in defamation because the warning and advice was not objectionable and moreover, the plaintiff's name was not mentioned in the article. *McGee,* 100 So. at 435. However, *McGee* is distinguishable from this action based on the size of the defamed class. In *McGee,* the article applied to insurance agents as a class. *See State of Louisiana v. Time, Inc.,* 429 So.2d 328, 334 (La.App. 1st Cir.

1971). That group presumably consisted of over twenty-five members and so it can be considered a "large" class.

In this action, the defamatory statements referred specifically to NYLIC agents, or as plaintiffs argue, only to NYLIC agents who sold policies to State of Louisiana and City of New Orleans employees. Plaintiffs characterize their defamed group as "small." Since the jurisprudence regarding group defamation has consistently held that this cause of action is available only to "small" groups and not to "large" groups, *McGee* is inapplicable to this case. 52 A.L.R.4th 617, § 4 (1987).

The Louisiana jurisprudence regarding defamation of small groups is rather limited. I have found only one case in which the court addressed this issue on its merits and not in dicta. In *Levert v. Daily States Pub. Co.,* 123 La. 594, 49 So. 206 (1909), the plaintiff claimed that he was defamed by a newspaper article accusing the Board of Administrators of Tulane University of favoritism and misconduct. The plaintiff was a member of the Board of Administrators. The defendants argued that there was no cause of action because the article did not name or identify the plaintiff and furthermore, the defendants did not even know the membership of the Board of Administrator at the time they published the newspaper article.

In holding that the plaintiff established a cause of action in defamation, the Court wrote:

> That the plaintiff was not named, and that the defendants did not even know that he was a member of the board, is no legal excuse, but may be considered as a mitigating circumstance. The libel not only assailed the corporate action of the board, but impeached the integrity of *every individual member* who participated in the proceeding.

> The wholesale charge of official favoritism and misconduct pointed to all the members of the board who participated in the proceedings. These gentlemen were citizens of more or less prominence

in the community, and their official connection with the Tulane University was well known. It is manifest that the plaintiff, *although not named* in the libelous publication, was necessarily one of its objects, and it must have been so understood by those who knew that he was a member of the board.

*Levert,* 49 So. at 211 (emphasis added). Thus, the Court recognized that when a small group is defamed, an individual member may establish a cause of action for defamation even though he is not specifically named or identified.

I have not found a subsequent case in which a Louisiana court confronted the issue of defamation of small groups, however, at least two cases address this issue in dicta. First, in *Hyatt v. Lindner,* 133 La. 614, 63 So. 241 (1913), the defendant sent a letter to the Mayor of New Orleans which implied that a certain building on Bourbon street was a house of ill-repute. In fact, the building was not a house of ill-repute but rather the residence of several families including the plaintiff, a sixty-three year old widow, and her unmarried daughter. The plaintiff brought an action in defamation. The defendant argued that there was no cause of action because the plaintiff was not specifically identified in the letter. *Id.* 63 So. at 245.

The Court held that there was no cause of action in defamation because the letter referred distinctly to the house, irrespective of who the residents might be. *Hyatt,* 63 So. at 245. However, the Court explicitly stated that,

The situation would have been different if the imputation contained in the letter had been one necessarily applying to each and every occupant of the house; for then, each and every one would have had a right of action, *though none had been specifically named or designated.*

*Id.* at 245 (emphasis added). Thus, the Louisiana Supreme Court again recognized that an individual may establish a cause of action when her small group is defamed even though she is not specifically identified.

Second, in *Gallodoro v. Times Picayune,* 1993 WL 330549 (La.Dist.) the court considered whether the plaintiffs could sustain a cause of action for a defamatory article that referred to "the people of St. Bernard Parish, Louisiana." The court held that an action in defamation is not sustainable for a group of such an enormous size—in that case, in excess of 50,000 members. *Id.* at 1. The court stated,

The law is quite well settled that an identifiable group in excess of about twenty-five, with an upward limit of fifty, cannot sustain an action in defamation where no particular person(s) or individual(s) is named or defamed.

Unfortunately, the court in *Gallodoro* failed to provide citations to, and I have been unable to find, the Louisiana cases that make this proposition of law so well-settled.

The logical implication of the court's statement is that an identifiable group with less than "about twenty-five" members *can* sustain an action in defamation where no particular individual is identified. This proposition is consistent with the Restatement (second) of Torts, § 564A (1977), which the *Gallodoro* court quotes in its opinion:

[§ 564A. Defamation of a Group or Class]

One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if:

(a) the group or class is so small that the matter can reasonably be understood to refer to the member; or

(b) the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the member.

*Gallodoro* is the only Louisiana case that cites this particular section of the Restatement (second) of Torts, however, several Louisiana cases adopt other sections of the Restatement (second) of Torts as authority for various proposition of defamation law.

See Sassone v. Elder, 626 So.2d 345, 353–354 (La.1993); Williamson v. Historic Hurstville Assoc., 556 So.2d 103, 107 (La. App. 4th Cir.1990); Gorman v. Swaggart, 524 So.2d 915, 919–921 (La.App. 4th Cir. 1988).

Considering the limited Louisiana jurisprudence regarding group defamation, the case law of other jurisdictions, the hornbooks of various scholars, and the Restatement (second) of Torts, I find that the question of whether Louisiana recognizes a cause of action for the defamation of small groups is, at the very least, an uncertainty which must be resolved in plaintiffs' favor. See Cavallini, 44 F.3d at 259. Accordingly, for the purpose of determining fraudulent joinder, I must assume that Louisiana law recognizes a cause of action for group defamation.

In regard to the size of the allegedly defamed group, plaintiffs contend that the defamatory statements refer to the NYLIC agents who sell to and service State of Louisiana and City of New Orleans employees and that this "small" group consists of only eight to eleven members. Plaintiff Mark Duffy's Motion to Remand, at 16. On the other hand, defendants contend that the statements refer to all NYLIC agents in Louisiana and that this is a "large" group, however, defendants do not state the number of members in this group. Defendants Randy J. Ungar and Ungar & Associates' Supplemental Brief in Opposition to Remand, at 4. The size of the allegedly defamed group is apparently a contested issue of fact which must be resolved in plaintiffs' favor. Therefore, I find that the defamed group may be sufficiently small so as to allow plaintiffs to state a cause of action for group defamation—there is a reasonable possibility that the defamatory words could be understood to be "of and concerning" plaintiffs. Thus, plaintiffs have alleged all the necessary elements to state a cause of action in defamation.

In the alternative, defendants argue that there is no possibility that they will be found liable for defamation because the allegedly defamatory words are entitled to a "qualified" or conditional privilege. In Martin v. Lincoln General Hospital, 588 So.2d 1329, 1333 (La.App. 2nd Cir.1991), the court stated,

A publication enjoys a "qualified" or conditional privilege ... if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty.

Defendants contend that their statements regarding NYLIC were made in good faith and that since the statements concerned a potential class action, both the policy holders and defendants, as the attorneys for the potential class action, had an interest in the subject matter.

In the defamation context, "good faith" means that a statement is made with reasonable grounds for believing it to be true. Martin, 588 So.2d at 1333. Plaintiffs dispute that defendants acted in good faith. In no uncertain terms, plaintiffs state, "Defendants were engaged in a smear campaign designed to harm plaintiff[s] and New York Life Insurance Company. Defendants hoped to extract and extort a settlement from New York Life Insurance Company in the frivolous putative class action case which was pending at that time." Plaintiff Mark Duffy's Reply Memorandum to Randy J. Ungar's and Randy J. Ungar & Associates' Opposition Brief, at 2.

It is clear that whether defendants acted in good faith is another contested issue of fact which must be resolved in plaintiffs' favor. Therefore, I find that good faith is absent and so the defense of qualified privilege is unavailable at this time.

Since plaintiffs have alleged all the necessary elements of defamation and no defense precludes this cause of action, I find a reasonable possibility that plaintiffs will be able to establish a cause of action in defamation against the Louisiana defendants.

### Invasion of Privacy

 Plaintiffs also make the related claim that defendants are liable for invasion of privacy since defendants unreasonably placed them in a false light before the public. *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d 1386, 1388 (La.1979); *Hines v. Arkansas Louisiana Gas Company*, 613 So.2d 646, 658 (La.App. 2nd Cir. 1993). For this cause of action, the publicity need not be defamatory in nature, only objectionable to a reasonable person under the circumstances and contain falsity. *Jaubert*, 375 So.2d at 1388.

 Plaintiffs' allegation that defendants falsely publicized that NYLIC agents defrauded clients is sufficient to state a cause of action for invasion of privacy—a reasonable person could find these accusations objectionable. Even though the solicitations did not refer to plaintiffs by name, the size of the affected group might be sufficiently small so that the state law may nonetheless impose liability on the Louisiana defendants.

### Conclusion

Considering the facts in a light most favorable to plaintiffs and resolving all uncertainties of law in plaintiffs' favor, I find that defendants have failed to meet their burden of proving that there is "absolutely no possibility" that plaintiffs will be able to establish a cause of action against the Louisiana defendants. *Cavallini* 44 F.3d at 259. Plaintiffs may be able to establish a cause of action for defamation and invasion of privacy. Thus, the Louisiana defendants are not fraudulently joined and consequently, there is no diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### Attorney Fees and Costs:

 Plaintiffs move for attorney fees and costs pursuant to 28 U.S.C. § 1447(c), which provides in pertinent part,

> An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal.

In determining whether I should impose attorney fees, the central factor is the propriety of defendants' removal. *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir.1993). Considering the nature of plaintiffs' tort claims and the uncertainty of the relevant law, I find no impropriety in defendants' removal of the complaints. Therefore, an award of attorney fees is not warranted under this statute.

 An award of costs, on the other hand, is not predicated on a finding of bad faith, negligent, or frivolous removal. *Miranti*, 3 F.3d at 929. The decision to award costs is left to the court's discretion, to be exercised based on the nature of the removal and the nature of the remand. *Id.* at 928. Generally, costs are allowed as a matter of course to the prevailing party in an action. Fed.R.Civ.P. 54(d)(1). Considering the Federal Rules of Civil Procedure's liberal approach to allowing costs, I find nothing that precludes the recovery of costs associated with removal. Plaintiffs are entitled to only those costs specifically listed in 28 U.S.C. § 1920. *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir.1993) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 2498, 96 L.Ed.2d 385 (1987)).

Accordingly,

IT IS ORDERED that plaintiffs' motions to remand are GRANTED;

IT IF FURTHER ORDERED that plaintiffs' motions for attorney fees are DENIED;

IT IS FURTHER ORDERED that plaintiffs' motions for costs are GRANTED.