PROVOSTY, J.
The defendant sent the following anonymous letter:
“New Orleans, August 21, 1911.
“Hon. Martin Behrman, Mayor, City N. O., La.
“Dear Sir: An investigation of the house No. 909 Bourbon street by the police will be highly appreciated. This place is an old shack, rented to several different families, but the actions of many well dressed and painted beauties and many well dressed and some married men continually coming and going does not look well for a respectable neighborhood. Last week an auto backed up and several men got out and entered this place. Now I do not care to see these married men get into trouble, but there are many respectable families in the neighborhood who sit out in the evening and have to face these unpleasant conditions.
“An early inspection of the place No. 909 Bourbon street will be highly appreciated by
“An Old Resident of the Neighborhood.”
This house belonged to plaintiff. It had one common entrance, flush with the street and opening into a central hall. On one side of this hall, downstairs, lived an old shoemaker. On the other side lived a Mr. Cassidy, with his wife and five small children. On one side of the house, upstairs, lived the plaintiff, a widow, 63 years old, and her unmarried daughter, whose age is not stated, but who, we gather, is of a certain age. On the other side, upstairs, lived a Mr. Sallinger and his wife and young brother.
The mayor caused the investigation to be made. Two policemen in full uniform came and questioned the neighborhood, including the defendant, and the inmates of the house. All, except the defendant, said they did not know of anything wrong. Defendant made the statement which he has repeated in his testimony in this case. The policemen had the anonymous letter with them, and showed it to the inmates of the house, including plaintiff and her daughter. The officers sought to ascertain who had written the letter, and inquired of defendant if he had not, and defendant denied that he had. Plaintiff recognized the defendant’s handwriting, and brought this suit in damages.
The allegations are that the statements of said letter and the repetition of same orally to the policemen were false and malicious and without probable cause, as the defendant well knew, and were made “for no other purpose than to harrass, annoy, and humiliate your petitioner,” and to “defame her, and injure her in her good name and in her property”; that by said letter defendant “intended to convey, and did convey, that your petitioner was conducting a disorderly house and one of ill fame, one *617 which in said neighborhood constituted a common nuisance; and that he thereby implied, insinuated, and charged that your petitioner was a person of loose morals and lewd character, and unfit for the society of respectable people”; and “that as a result of the said acts of the said John W. Lindner, both in libeling and slandering your pe titioner, she had suffered much damage; that she has suffered great anguish and mortification; that she has been embarrassed and humiliated among her neighbors and acquaintances, and that she has sustained and is entitled to recover from the said John W. Lindner damages in the full sum of $10,000; that as punishment to the said Lindner, who is a man of large means, for these willful and malicious acts, done by him without reasonable or probable cause, but only for the purpose of humiliating and injuring your petitioner, and particularly because of his cowardly method of clandestinely besmirching and attempting to ruin petitioner’s reputation by addressing an anonymous letter to a public official, and thus attempting to hide his identity, she is entitled to punitive damages in the sum of $5,000.” The defendant bore no ill will to the plaintiff or her daughter. The allegation is made in the petition that he “is and for many years past has been the attending family physician of your petitioner and her family.” In the brief it is suggested that ill feeling on his part may perhaps have been engendered from his- having seen other physicians go into plaintiff’s house shortly before the writing of this letter, which may have led him to think that he was being supplanted, or that it may perhaps have resulted from the fact that plaintiff’s married daughter, whom he had treated while she was here on a visit to her mother, had not paid his bill of $13, and was neglecting to pay it, although long past due. But nothing shows that defendant knew of other physicians having been thus called, and while he had been insistent upon the payment of his bill, so much so that he had written a letter to the husband of plaintiff’s daughter, who was in the navy, threatening him to call the matter to the attention of his superiors if he did not pay the bill, the amount was but trifling, $13, and this letter was written one year before the anonymous letter, and the $13 bill was then 10 months old. As a matter of fact, defendant was on a footing of amity with plaintiff and her daughter.
Defendant filed a prayer for oyer of the anonymous letter, alleging that he was unable to plead or answer without such oyer. This prayer was denied, because the document was not in the possession of the plaintiff but of the public authorities, and therefore just as accessible to defendant as to plaintiff.
Defendant next excepted to the vagueness of certain allegations of plaintiff’s .petition, not recited hereinabove, wherein it was charged that defendant had repeatedly spread and circulated said slanderous charges among petitioner’s neighbors and acquaintances. This exception was sustained, and plaintiff was ordered to amend; and, as she did not do so, that part of her complaint is to be considered as abandoned.
Defendant then answered, as follows:
“Denies all and singular the allegations of plaintiff’s petition; specially denies the libel and the slander charges by plaintiff; specially denies the publication of the same, and specially denies that plaintiff suffered any damages in the premises.”
The answer goes on to aver that the allegations of libel and slander contained in plaintiff’s petition were unfounded and untrue, and were made maliciously and without probable cause, and had damaged respondent in the sum of $5,000, and to pray judgment for this sum.
At the beginning of the trial, before any evidence had been taken, counsel for defend *619 ant informed the court that defendant admitted, and asked that it be put of record, that the anonymous letter had been written by him.
Counsel for plaintiff replied that the admission came too late; that they refused to accept it, but would go on and prove their case as if the admission had not been made.
When asked why he did not sign his name to the anonymous letter, defendant answered;
“The reason I didn’t sign the letter, is: First. Because this is a tenement house, and there are several families living in it. I didn’t specify any individual family. I didn’t make any special charges against the individuals of the house. Secondly. I am a practicing physician in that section, and have treated one of the tenants of that house, and didn’t care to gain her animosity. Third. Because whilst I didn’t make any specific charges against any individual, I didn’t think that it was necessary to sign the name, and furthermore I think it is within the bounds of every good citizen, when he sees things as that occurring in his neighborhood, to request the police to make an investigation, and if there is nothing wrong so much the better, and if there is I want to know and get right to it.”
Defendant testified that a certain woman, whom he knew to be a lewd and dissolute character, visited the place frequently; that he saw her go in one time with a man; that he also saw another woman, a blond lady, visit the house he could not say how many times, but several times; that on one occasion he saw another woman come out of the house with a man, staggering from intoxication; that they spoke very loud, and the man was bleeding over the eye; that he saw a certain married man, whom he knew by name, sneaking into the house several times; that once near midnight a taxicab stopped in front of the house and several men got out of it and went into the house; that on other occasions he noticed different men go into this house; that he paid no attention to the matter until the lady folk of his house began discussing it; and that he then wrote the letter.
A witness testified that in October, 1910, as he and a friend, both under the influence of liquor, were passing this house at 1, or half past 1, o’clock in the morning, his friend stopped and spoke to a lady who was in the door with a man, that the man went away, and that the lady asked his friend to buy some beer, and that the friend went and got the beer in a can which the lady went into the house and got, and that the three went upstairs and drank the beer and were together over an hour, the room being only dimly lighted.
This witness says that he is a Syrian, and is 23 years old, and lives opposite the house in question, with his father and mother; that he is an electrician and in business for' himself; that he was subpoenaed in the case; that he had never told any one what he knew about the case until questioned by counsel for defendant in the witness room.
As we do not see why this witness should have been summoned unless he had told some one what he knew, and considering the rather startling character of the things he says, and in view of the testimony given by the .inmates of the house, we do not know how much weight is to be allowed to his testimony.
Plaintiff and her daughter and Mr. Cassidy and Mr. Sallinger testified to the reputableness of the house, and were corroborated by a Mr. Botsay, who for several years had been a constant visitor, and Mr. Beneneto, who was the man whom defendant referred to as sneaking into the house, and whose purpose in going there was to bring labor tickets to Mr. Cassidy, procuring him work as a laborer in unloading banana ships.
The evidence leaves no doubt, however, that the disreputable woman in question was a frequent visitor to the house. She is the niece of Mr. Cassidy and the sister of Mr. Sallinger.
[1] Defendant claims that the anonymous letter was a privileged communication, and plaintiff denies that it was, and contends *621 that defendant, having denied that he was the author of it, is cut off from the defense •of justification.
The latter contention is based upon the settled jurisprudence of this state, and must therefore be sustained. Schwing v. Dunlap, 130 La. 498, 58 South. 162; Harrison v. Jurgielewiez, 28 La. Ann. 238; Williams v. Mc-Manus, 38 La. Ann. 161, 58 Am. Rep. 171; Miller v. Roy, 10 La. Ann. 231.
The learned counsel for defendant argued with great cogency that this jurisprudence is wrong; that our rules of pleading in the matter of libel and slander are derived from the common law, and that at common law the defense of privilege could be invoked under the general issue (citing Newell on Libel and Slander, c. XIX, pp. 391, 392, §§ 8-10; c. XXI, p: 649, § 63; c. XXIY, p.,788, § 37; 25 Oye. 480). Suffice it to say that this •court long ago adopted a different rule, namely, the one just stated; which learned counsel admit is the one adopted in the Judicature Act of .England and in the several codes of procedure founded upon it in this ■country.
Learned counsel cite the case of Haney v. Trost, 34 La. Ann. 1146, 44 Am. Rep. 461, as showing that the jurisprudence of this court on this point has not been unvarying. As we read that decision the court in no wise intended in it to depart from the rule just stated. There were in it, as shown by the brief, two defenses, namely, privilege and absence of malice. These seem to have been urged as distinct and separate defenses, and to have been treated by the court as such. We so gather from the fact that, after having sustained the defense of absence of malice, the court went on to say that the consideration of the “other defenses” was unnecessary. The “other defenses” here referred to could only have been that of privilege. This defense of privilege would seem therefore not to have been considered by the court.
[2] Defendant next contends that said letter does not name, or otherwise designate, plaintiff, and that therefore it cannot be made the basis of a suit in libel, as there must be certainty of imputation before a plaintiff in such a suit can recover.
We find that contention to be well founded.
From Newell on Defamation, Libel and Slander, c. XIII, p. 248, § 1, we take the following:
“In every action for defamation two things are necessary:
“(1) A defamation apparent 'from the words themselves, for no innuendo can alter the sense.
“(2) Certainty as to the person who is defamed, for no innuendo can render certain that which is uncertain.
“Though the words used may at first sight appear only to apply to a class of individuals, and not to be specially defamatory of any particular member of that class, still an action may be maintained by any one individual of that class who can satisfy the court that the words referred especially to himself, but the words must be capable of bearing such special application.”
And, at page 258, the following:
“It is undoubtedly a correct principle of law that, where defamatory matter is published against a class or aggregate body of persons, an individual member not specially included or designated, among other reasons, the body may act very corruptly or disgracefully, and yet the individual may'have been in the minority and may have opposed the measures alluded to; but, where many individuals are severally included in the same attack, the plaintiff is none the less entitled to redress because others are injured by the same act.”
From Odgers on Libel and. Slander, pp. 98, 99, we take the following:
“The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff.
“If the words used really contain no reflection on any particular individual, no averment or innuendo can make,them defamatory. An innuendo cannot make the person certain which was uncertain before.
“So, if the words spoken or written, though plain in themselves, apply equally well to more persons than one, evidence may be given, both of the cause and occasion of the publication, *623 and all the surrounding circumstances affecting the relation between the parties, and also of any subsequent article referring to the former one, or of any statement or declaration made by the defendant as to the person referred to.”
As an illustration of the foregoing, the following case is adduced:
•‘The defendant wrote and published that his hat had been stolen by some member of No. 12 Hose Company. This hose company was a volunteer, fire brigade, unincorporated, and the men brought a joint action. Held, that the action could not be maintained, and that the defendant could not be compelled to declare to which individual members he referred. Giraud v. Beach, 3 E. D. Smith (N. Y.) 337.
“If the defendant said to a master, ‘One of your servants hath robbed me,’ in the absence of special circumstances, no one could sue; for it is not apparent who is the person slandered. James v. Rutlech, 4 Rep. 17.”
In Lebovitch v. Levy Bros., 128 La. 518, 54 South. 978, the defendant had alleged in another suit that:
“The affairs of the Elam Paper & Stationery Co. had been placed in great confusion, and the company’s business ruined, by the misconduct and mismanagement of its president and of its secretary-treasurer.”
Complaining that this allegation was a libel upon him, Lebovich, who was the secretary treasurer thus referred to, brought suit. The court rejected the demand for the reason, among others, that the averment had not named the plaintiff, and had not been specially directed against any one in particular, and therefore was not actionable by plaintiff.
In support of their contention that the letter did not designate plaintiff, and that therefore she has no cause of action, the learned counsel argue, as follows:
“On the question of certainty, it must be observed that this is not a case where the plaintiff, whether as owner or tenant is operating a boarding house, or a lodging house or hotel, or is in full possession and control of the entire premises, such as the head of a family, or occupies a private residence, separate and apart from other residences. In these cases, such boarding or lodging house keeper, such head of the family, etc., might have good reason to feel aggrieved should the slanderous words be directed at the conduct of the house over which he is not only interested, but over which he has full control. But when an owner divides his premises into independent apartments, and leases the different apartments to several individuals, who are not connected with one another, and over whom he has no control with respect to the conduct of the tenants in each of said apartments, it is inadmissible to say, because the owner occupies one of said apartments, that the slanderous words were intended as applying to the conduct of his apartment. We insist that each apartment is a separate establishment, each lessee a separate occupant, having no necessary relation or connection with the other occupants or with the owner, except that of landlord and tenant. And in such case, as in this case, plaintiff has no control over, nor is she identified with, the apartments rented by her to her lessees, any more than any one of her tenants has any control over or is identified with the apartments of the other tenants.
“To illustrate: If I should suggest to the mayor that painted beauties and well-dressed men visit the - Hotel, and call for an investigation, the suggestion may be thus directed to the hotel proprietor, for he has control over the situation; so, too, if I indulge in like suggestions concerning a boarding house or lodging house or a private residence, known and identified as operated by or occupied by Mr. So and So.
“But, if I should say that painted beauties and well-dressed men visit the Ansonia Apartment House, which is divided into four separate apartments, one of which is occupied by the owner, can such owner claim that such statements were directed to the character of his apartments? There is no difference between four houses in a row and an apartment house comprising four apartments, in so far as the matter before us is concerned. The only difference is the common entrance, and the separation of apartments is horizontal in one case and vertical in the other. Finally, the occupants of apartment houses are very often strangers to one another, and each occupant or family visited by people who are not even acquainted with or know who are the other occupants of the apartment house.
“It is contended that because the letter addressed to the mayor was unsigned or anonymous this fact discloses malice. But malice against whom? We refer to our original brief and the testimony of Dr. Lindner, which furnishes a complete answer to this claim. Whilst an anonymous communication is a despicable thing in some cases, it is not so in all. In privileged communications it is commendable.”
We find no answer to this reasoning; and, therefore, must sustain the contention. The situation would have been different if the imputation contained in the letter had been *625 one necessarily applying to each and. every occupant of the house; for then, each and every one would have had a right of action, though none had been specially named or designated.
The situation would also have been different if plaintiff had shown that, while the letter did not name or otherwise designate her, yet that it was in fact aimed at her, and that no one but she could, under all the circumstances of the case, have been understood to have been intended to be referred to. But plaintiff has not shown this. On the contrary, the letter itself has reference distinctly to the house, irrespective of who the inmates might be; and no circumstances indicate that the plaintiff in particular was meant to be referred to.
[3] The learned counsel for plaintiff contend that the defendant, by this denial of authorship, cut himself off from even this defense of the letter not having named or otherwise designated plaintiff, and therefore not having been libelous of her. But, evidently, if the letter was not in fact libelous of plaintiff, the denial of its authorship by defendant could not have the effect of making it so. It stands to reason that a libel suit, based upon a publication not libelous, cannot be maintained.
[4] But while plaintiff has not been libeled or slandered, the investigation which was made of this house belonging to her and in which she lived, and upon the renting of the apartments of which she largely depended for a living, has caused her considerable annoyance, mortification, and humiliation; and the question arises, how far the defendant is responsible for this. We have concluded from the evidence that while his suspicions were in fact unfounded, as was proved by the investigation, yet that they were not without probable cause, and that he acted without malice. The case, therefore, is that of a householder who, having been led by appearances to suspect that the house next door to that which he owns and occupies with his family is not what it should be, honestly calls the attention of the mayor of the city to the matter, privately and anonymously, and requests an investigation. From such an act, does a liability in damages arise? We think not. It was an act in aid of the public authorities in the maintenance of good order. The law, as this court has had frequently occasion to say, favors the action of citizens in thus coming to the assistance of the public authorities.
[5] The éclat with which this investigation was made is not imputable to defendant. His request was not that the house be suppressed, but merely that it be investigated. A private and quiet investigation would have answered every purpose. If the police thought proper to appear in full regalia and with pipe and drum, as it were, stir up the neighborhood and raise a scandal, that was their doing, not defendant’s. He had probable cause for his action; and this probable cause, though not available to him as a defense to the action in libel and slander (because of the strict rules of pleading which our jurisprudence has established for those actions, according to which a defendant who denies his authorship of the libel or slander is cut off from every other defense), may be available as a defense to that part of plaintiff’s demand founded, not upon the injury done her by the publication of the alleged libel, but, distinctly, upon the injury done her by the investigation having been made in the manner it was made. The latter demand is put fully at issue by the general denial, which put at issue every allegation of the petition. Bonnabel v. Bouligny, 1 Rob. 292; State ex rel. v. Sheriff, 47 La. Ann. 184, 16 South. 655. Decisions to that effect are so numerous that citation of them can hardly be necessary.
It is therefore ordered, adjudged, and de *627 creed that the judgment appealed from be set aside, and that the suit of plaintiff be dismissed at her cost in both courts.
The CHIEF JUSTICE and MONROE and LAND, JJ., concur in the decree.