THERIOT, J. 1gThe Appellants, Baptiste Brunner, et al (“Appellants”) appeal the judgment of the Nineteenth Judicial District. Court granting John F. Holloway’s and Lambda Chi Alpha Fraternity’s (“Appellees”) Motion for Summary Judgment. For the following reasons, we sustain a peremptory exception raising the objection of no cause of action noticed by this court on our own motion, we vacate the summary judgment, and we render judgment in favor of Appel-lees, dismissing the petition with prejudice. FACTS AND PROCEDURAL HISTORY Appellants in this case were students at Louisiana State University (“LSU”) during the fall of 2011. Appellants were also members of the LSU chapter of the Lambda Chi Alpha fraternity (“the LSU chapter”). In November 2011, each Appellant was expelled from the LSU chapter for violation of the Lambda Chi Alpha fraternity’s policies. The primary incident leading to this lawsuit occurred on November 15, 2011, when John F. Holloway (“Mr. Holloway”) made an online social media post which stated, “Up way to[o] early. En route [to] Baton Rouge. The fraternity world of old is dead; beer monkeys and dope heads are extinct. THAT’S THE DEAL.”[1] At that time, Mr. Holloway was the Director of Chapter Services for Lambda Chi Apha Fraternity Incorporated (“Lambda Chi Apha”). Mr. Holloway made the post in question while travelling to Baton Rouge to conduct a membership review of the LSU chapter. The membership review was conducted on November 19, 2011. According to Mr. Holloway, the membership review included a meeting 1 ^between himself and the fraternity members, as well as individual interviews between volunteers and the fraternity members. Appellants alleged that, at the meeting, Mr. Holloway gave the fraternity members a choice to resign or take a drug test as part of the review process. Appellants further alleged that each of the Appellants submitted to the drug test and passed their individual drug tests. As for the individual interviews, Mr. Holloway stated that he facilitated the review process, but did not attend the individual interviews. The interviews were conducted by volunteers, who sought information regarding whether the individual members had been aware of drug use previously or had participated in drug use recently. A few days after the membership review, a large number of the LSU Chapter’s members were expelled from the fraternity, including members who passed their drug tests. Several more members were suspended or otherwise disciplined. Each of the disciplined members received a Notice of Disciplinary Action dated November 20, 2011 and signed by Mr. Holloway. Mr. Holloway admitted to signing each of these letters, but denied making any determinations in regard to individual membership. Following the aforementioned expulsions and suspensions, two newspapers published articles regarding these disciplinary actions. The first article was published by the Baton Rouge Advocate on November 23, 2011. The Advocate’s article stated that close to sixty members of the LSU chapter had been accused of drug abuse or other violations of fraternity rules following the membership review. The Advocate’s article also published the primary social media post at issue in this case. The second article was published by the Daily Reveille—LSU’s student newspaper—on November 28, 2011. The Daily Reveille’s article | ¿stated that “[s]ome members were evicted from the Lambda Chi house on campus after being suspended or expelled by the national organization for unspecified actions that violated the fraternity’s national standards.” The article did not mention Mr. Holloway’s tweet, nor did it mention any alcohol or drug abuse. On November 19, 2012, Appellants filed suit against Mr. Holloway and Lambda Chi Alpha, alleging that Appellants were wrongfully expelled from the LSU chapter of Lambda Chi Alpha. Appellants further alleged that Mr. Holloway had defamed Appellants in his online posting. Appellants' also alleged that because Mr. Holloway was acting in the course and scope of his employment when the post was made,. Lambda Chi Alpha was vicariously liable for Mr. Holloway’s actions. Finally, Appellants alleged Mr. Holloway’s post, along with the subsequent newspaper coverage, constituted an invasion of privacy. The wrongful expulsion claim was later dismissed via consent judgment on January 28, 2014. On September 11, 2014, Appellees filed Peremptory Exceptions raising the objections of No Cause of Action and Prescription. Appellees specifically argued that Appellants failed to state a cause of action for defamation or invasion of privacy. Further, in regard to prescription, Appellees argued that Appellants failed to bring their suit within the one year prescriptive period. Mr. Holloway’s tweets were posted on November 14 and 15, 2011. Appellants did not file suit until November 19, 2012. Accordingly, Appellees argued that because Appellants did not bring their lawsuit within one year of November 15, 2011, Appellants’ defamation and invasion of privacy claims were prescribed. In response to Appellees’ exceptions, Appellants argued that they had succeeded in stating a cause of action for their defamation claim and theiij s invasion of privacy claim. Appellants also argued that the one year prescriptive period did not begin until the tweet was published by the Advocate on November 28, 2011.[2] As such, Appellants argued that their suit was brought within the prescriptive period. On December 17,. 2014, the trial court entered a judgment granting Appellees’ Exception of Prescription in part.[3] Specifically, the trial court found that Appellant’s claims of defamation and invasion of privacy had prescribed as to Mr. Holloway’s tweets, but not as to the disciplinary letters. The trial court also denied Appellees’ Exception of No Cause of Action as it related to the disciplinary letters issued by Lambda Chi Alpha, without prejudice. On December 18, 2014, Appellants filed a Mption for New Trial. On April 30, 2015, Appellants’ Motion for New Trial was denied.[4] On May 19, 2016, Appellees filed a Motion for Summary Judgment, arguing that Appellants failed to satisfy every essential element of their remaining claims for defamation and invasion of privacy. Specifically, Appellees argued that because the tweets had been dismissed from the litigation, Appellants had only the disciplinary letters as evidence, which were never published to the public. Appellants argued in response that, although the previous judgment had. found that their claims of defamation and invasion of privacy had prescribed as to Mr. Holloway’s tweets, their injuries were not suffered on|R the day of the tweet. Instead, Appellants argued that their claim began the day that the allegedly defamatory statement was published. Specifically, Appellants argued that the defamatory statement was first published on November 23, 2011, which meant that prescription did not commence until that date. Under this line of reasoning, Appellants argued that their defatnation 'and invasion of privacy claims had not' prescribed. Accordingly, Appellants argued that the trial court should not grant Appellees’ Motion for Summary Judgment. A hearing on the Motion for Summary Judgment was held on November 7, 2016. Pursuant to a judgment signed on January 11, 2017, the trial court granted Appellees’ Motion for Summary Judgment. The trial court found that, because Appellants’ claims as to the tweet had’prescribed, the only remaining aspect of 'the Appellants’ original petition was the ■ disciplinary letters. The trial court further found that the disciplinary letters did not constitute defamation or invasion of privacy as a matter of law. Prom this Judgment, Appellants have appealed. ASSIGNMENTS OF ERROR Appellants assign two related assignments of error. (1) The trial court erred in granting a partial exception of prescription, and then again in denying a motion for new trial on that issue. (2) The trial court erred in granting “Appellees’ motion for summary judgment. DISCUSSION In the two'related assignments of error, Appellants argue that the trial court incorrectly granted a Partial Exception of Prescription as to Mr. Holloway’s tweets and incoirrectly denied a Motion for New Trial on that issue. According to the Appellants, because the trial court’s subsequent! 7 granting of Appellees’ Motion for Summary Judgment was based on the above errors, the trial court’s granting of the Motion for Summary Judgment was also incorrect. Although Appellants and Appel-lees disagree as to when prescription commenced as to the defamation and invasion of privacy claims, we find that, regardless of prescription, the elements of defamation and invasion of privacy are not met in this case. Accordingly, Appellants fail to state a cause of action for defamation or invasion of privacy. An exception of no cause of action raises the issue of whether the law grants a remedy to anyone for the particular harm alleged by the plaintiff. Amoco Production Co. v. Carruth, 457 So.2d 797, 799 (La. App. 1st Cir. 1984). It is a peremptory exception which may be pled or noticed by the trial court or appellate court on its own motion at any time prior to submission of the case for a decision. Id. See also La. C.C.P. art. 927. Accordingly, this court has the authority to notice on its own accord Appellants’ failure to state a cause of action. Further, since there are no additional facts that can be pleaded or established to provide the appellants with a claim for defamation or .invasion of privacy, the grounds for the objection of no cause of action cannot be removed by amendment of the petition. Therefore, it is unnecessary to permit the appellants the opportunity to amend the petition. Appellants’ Defamation Claims Defamation is a tort which involves the invasion of a person’s interest in his or her reputation and good name. Costello v. Hardy, 2003-1146 (La. 1/21/04); 864 So.2d 129, 139. In Louisiana, there are four necessary elements to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisherJ s and (4) resulting injury. Id. If even one of the required elements of the tort is lacking, the cause of action fails. Id. at 140. In regard to the first element, Appellants argue that Mr. Holloway’s tweet contained false and defamatory statements concerning the appellants. As previously set forth, the tweet states, “Up way to[o] early. En route [to] Baton Rouge. The fraternity world of old is' dead; beér monkeys and dope heads are extinct. THAT’s THE DEAL”. Appellants argue that this tweet, when taken in context with the subsequent expulsion letters and Lambda Chi’s refusal to disavow to the media that the appellants were expelled for drug use, constitutes a false and defamatory statement concerning the appellants. Generally, a communication is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise exposes a person to contempt or ridicule. Fitzgerald v. Tucker, 98-2313 (La. 6/29/99); 737 So.2d 706, 716. Thus, a communication which contains an element of personal disgrace, dishonesty, or disrepute undoubtedly satisfies the definition of defamation. Id. Despite this, not all defamatory statements are actionable, as many statements are protected by the First Amendment’s guarantee of freedom of speech. Id. For example, “a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection,” Id. (citing Romero v. Thomson, 94-1105 (La. 1/17/95); 648 So.2d 866, 870)). The determination of whether a statement is an assertion of fact or ,a mere expression of opinion should be made according to the facts of each particular case. Bussie v. Lowenthal, 535 So.2d 378, 381 (La. 1988). The-bcrucial difference between a statement of fact and an opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker’s or writer’s opinion, or as a statement of . existing fact. Id. (citing Mashburn v. Collin, 355 So.2d 879, 885 (La. 1977)). If it can be determined from the application of this test that the statement was an expression of opinion, then the defamation action should fail, unless the opinion gives rise to a false and defamatory factual inference which was made with actual malice. Id. “Actual malice,” which differs from “malice,” is defined as publication with-knowledge that a statement is false or with reckless disregard for its truth. Costello, 864 So.2d at 143 n. 14 (citing New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The facts of this- case indicate that Mr, Holloway’s post contained his subjective opinion, Mr. Holloway’s claim that “[t]he fraternity world of old is dead” expressed his belief that changes, were occurring “in the fraternity and sorority world.” His next statement—“beer monkeys and dope heads are extinct”—follows that same logic. His post contained a general statement, which was not explicitly directed at any.individual. As such, the post does not contain any provably false factual connotations. Further, Louisiana courts recognize the principle that “the defamatory words must refer to some ascertainable person, and that person must be the plaintiff.” Weatherall v. Dep’t of Health and Human Resources, 432 So.2d 988, 994 (La. App. 1st Cir. 1983), writ denied, 437 So.2d 1150 (La. 1983). (citing Hyatt v. Lindner, 133 La. 614, 622, 63 So. 241 (La. 1913)). If the words used contain no reflection on any particular individual, no averment or innuendo can make them defamatory. Id. |inMr. Holloway’s tweet did not reference any particular individual or ascertainable person. Additionally, although some Louisiana courts have recognized group defamation as a viable cause of action,[5] Mr. Holloway’s tweet does not refer to any group in particular. The tweet merely references “[t]he fraternity world of old.” Because Mr. Holloway’s tweet contains his subjective opinion and does not refer to any ascertainable person or persons, the tweet does not constitute a defamatory statement. As previously stated, Appellants argue that the combination of Mr. Holloway’s tweet, the expulsion letters, and Lambda Chi’s “no-comment” to the Advocate constitute defamation of the appellants. For the aforementioned reasons, the tweet itself is not a defamatory statement. The expulsion letters also fail to satisfy the required elements of a defamation claim. A copy of one of the expulsion letters is contained within the record. The letter includes a general statement regarding why the member in question was expelled, but contains no specific information about the expelled individual aside from their name and Zeta number.[6]. As such, the letter contains no statements that could be deemed defamatory. Further, these letters were not published by the Appellees to any third parties. Therefore, the expulsion letters do not satisfy the elements of a defamation claim. Finally, neither of the newspaper articles contain material indicative of defamation by the appellees. The Advocate’s article includes a quote by Mr. Holloway, which states in relevant part that “some of [the fraternity’s] members had chosen not to live by [the fraternity’s] core values and ritualistic teachings.” The Advocate’s article also includes Mr. Holloway’dn tweet, which—as previously stated—contained Mr. Holloway’s opinion, not a defamatory statement. The LSU Reveille’s article includes the same statement by Mr. Holloway regarding core values and does not reference Mr. Holloway’s tweet in any way. Accordingly, neither article includes any.statements made by the appellees that could satisfy the elements of a defamation claim. Because neither Mr. Holloway’s tweet, the expulsion letters, nor his statements in the two newspaper articles are enough to satisfy the elements of defamation, the Appellants’ defamation claims fail. Appellants’ Invasion of Privacy Claims Appellants argue that Mr. Holloway’s tweet constituted an invasion of privacy. Specifically, Appellants argue that the tweet depicted the appellants in a “false light” before the public and that Mr. Holloway’s statements, which were made to the public, were both objectionable to a reasonable person and false. The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated. Tate v. Woman’s Hosp. Foundation, 2010-0425 (La. 1/19/11); 56 So.3d 194, 197. The right to privacy is defined in Louisiana as “the right to be let alone.” Id. (citing Pack v. Wise, 155 So.2d 909, 913 (La. App. 3rd Cir. 1963), writ denied, 245 La. 84, 157 So.2d 231 (1963). A tort of invasion of privacy can occur in four ways: (1) by appropriating an individual’s name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts. Id. 112Appellants first argue that Mr. Holloway’s tweet falls under the “false light” version of invasion of privacy. A cause of action for “false light” invasion of privacy arises from publicity which unreasonably places the plaintiff in a false light before the public. Perere v. Louisiana Television Broadcasting Corp., 2000-1656 (La. App. 1 Cir. 9/28/01); 812 So.2d 673, 676. The publicity need not be defamatory in nature, but must be objectionable to a reasonable person under the circumstances and must contain either falsity or fiction. Id. Both newspaper articles involved in this ease center around the expulsion of a large number of members of the LSU chapter. These articles do not name any of the appellants. Further, Mr. Holloway’s tweet did not name any of'the Appellants, nor did he name the LSU chapter itself. His comments therefore could not have placed any member in a false light, because no individual or group was mentioned. Further, although the tweet and expulsions were all mentioned in the Advocate’s article, Mr. Holloway’s comments in the article itself did not name any of the individuals expelled or provide any specific reasons as to why any individuals were expelled, aside from Mr. Holloway’s assertion that some of the members had chosen not to live by Lambda Chi’s core values. Second, Appellants argue that Mr. Holloway’s tweet constitutes an unreasonable public disclosure of private facts. However, as previously stated,' Mr. Holloway’s tweets did not disclose any facts about any of the appellants. The tweets contained Mr. Holloway’s opinion and provided no information about the Appellants. Because Mr. Holloway’s tweets did not place any of the Appellants in a “false light” before the public or disclose any private facts, Appellants’ invasion of privacy claims fail. ^DECREE For the foregoing reasons, we find that the Appellants have failed to state a cause of action for defamation and have failed to state a cause of action for invasion of privacy. Therefore, we vacate the trial court’s grant of summary judgment and render judgment in favor of John F. Holloway and Lambda Chi Alpha Fraternity, dismissing with prejudice, the petition filed by the appellants, Baptiste Brunner, Cody R. Miranda, Robert Henry Perez, Jr., Leon Roy, IV, Bradley Leopold, Patrick Spruell, Albert Adams, Jr., Justin Baylis, James H. Simon, McLean A. Smith, Michael Alan Grace, Curtis Chastain, Patrick Mills, Hilary J. Boone, IV, Matthew Harrison Hale, Ryan Regard, Davis Steele, Matthew Taylor Burger, Chase Fresina, Thomas Boyer, Rhett Hymel, Gordon Clark, Alex McDuf-fie, Jack Hymel, Matthew Gement, and Travis Campbell for failure to state a cause of action. All costs of this appeal are assessed to the Appellants. VACATED AND RENDERED. Mc.Clendon, J., concurs and assigns reasons. . Welch, J., concurs without reasons. . Mr. Holloway posted two other relevant tweets. The first was posted on November 14, 2011, and stated "#unprecedented situations [for] chapter services. No time [for] idle banter. Chaos [at] the gates & I have zero tolerance [for] everyone caught in their own shit.” The other was posted shortly after the tweet at issue in this litigation, and stated, "Excuses and assholes move to the exits. What worked [before] doesn’t work anymore. Values trump apathy and growth destroys apathy.” . Appellants incorrectly claim that the LSU Reveille published an article containing Mr. Holloway’s tweet on November 23, 2011. The Advocate published an article containing Mr. Holloway's tweet on November 23, 2011. The LSU Reveille published an article about the expulsions on November 28, 2011. This article did not reference the substance of the tweet in any fashion. . We notice a discrepancy in regard to the date of this judgment. In the trial court’s subsequent judgment granting Appellees’ Motion for Summary Judgment, the trial court incorrectly states that the judgment granting Appellees’ Exception of Prescription in part was rendered on December 12, 2014. On the contrary, the judgment granting Appellees’ Exception of Prescription in part was- rendered on December 17, 2014. .Appellants appealed this judgment on June 23, 2015, but the appeal was ultimately dismissed on the basis that the December 17, 2014 judgment was a partial judgment under La. C.C.P. art. 1915(B) and had not been designated as an appealable judgment. . In Bujol v. Ward, 00-1393 (La. App. 5 Cir. 1/30/01); 778 So.2d 1175, writ denied, 01-0555 (La. 4/27/01); 791 So.2d 117, the Fifth Circuit discussed the theory of group defamation. Because Mr. Holloway’s tweet did not refer to any group, we decline to address this issue. . Lambda Chi Alpha assigns Zeta numbers, to members as a means of identification.