Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,717-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SHANIKA RENEE GREEN                          Plaintiff-Appellant

versus

WAL-MART LOUISIANA, LLC,                     Defendants-Appellees
ET AL.

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 634,703

Honorable Ramon Lafitte, Judge

* * * * *

| | |
|---|---|
| THE PESNELL LAW FIRM, APLC<br>By: J. Whitney Pesnell<br>　　Billy Ray Pesnell | Counsel for Appellants,<br>Shanika Renee Green,<br>Individually and OBO<br>Ahlona Trishelle Green<br>(Minor) |
| CHADWICK, ODOM & STOKES, LLC<br>By: Wesley Alexander Hooper | Counsel for Appellee,<br>Wal-Mart Louisiana,<br>LLC |
| THE HARVILLE LAW FIRM, LLC<br>By: Douglas Lee Harville | Counsel for Appellee,<br>Crime Stoppers of<br>Shreveport, Inc. |

PHELPS DUNBAR LLP                      Counsel for Appellee,
By:  Ashley J. Heilprin                Mission Broadcasting,
     James H. Gilbert                  Inc., d/b/a KMSS-TV
     Mary Ellen Roy                    and/or KMSS FOX 33

* * * * *

Before THOMPSON, MARCOTTE, and ELLENDER, JJ.

**THOMPSON, J.**

Shanika Green, an aggrieved shopper at Wal-Mart in Shreveport, filed a defamation action against a local television station and a crime stoppers organization, seeking damages for publication of her image on a freezeframe of the store's surveillance footage in connection with a purported theft. Wal-Mart provided photos from their surveillance footage to the Shreveport Police Department, who initiated an investigation and prepared a press release which was published online by the local news station, KMSS, and Crime Stoppers. Green turned herself in to law enforcement and was charged with theft in Shreveport City Court, but the charges were ultimately dropped. Green's defamation lawsuit in district court against KMSS and Crime Stoppers alleged they had erroneously relied on the press release from the Shreveport Police Department and should have investigated further before publishing that the individuals depicted in the freezeframe were being sought in connection with the investigation. The trial court granted exceptions of no cause of action in favor of both defendants and granted a special motion to strike in favor of KMSS, pursuant to La. C. C. P. art. 971, assessing attorney fees against Green. For the following reasons, we affirm the decision of the trial court to grant the exceptions in favor of both KMSS and Crime Stoppers, and remand for further proceedings to fix the amount of attorney fees and costs owed to KMSS.

## FACTS

On or about January 21, 2021, a loss prevention officer for Wal-Mart, Louisiana, LLC ("Wal-Mart"), reported to the Shreveport Police Department ("SPD") that a theft had occurred at approximately 6:00 PM on January 15,

2021, at Wal-Mart's store on 1645 East Bert Kouns Industrial Loop in Shreveport, Louisiana. Wal-Mart prepared a report for SPD based upon the loss prevention department's review of its store surveillance videotapes which included screen shot photographs taken from the surveillance video of the two unidentified black women and a draft of a press release.

SPD transmitted the photographs and the press release to Crime Stoppers of Shreveport, Inc. ("Crime Stoppers"),[1] and Mission Broadcasting, Inc. d/b/a KMSS-TV and/or KMSS Fox 33 ("KMSS"). KMSS posted a news report on its website and social media page that stated SPD was seeking the public's help in identifying two women in a photograph who "may be connected with a theft" at a local Walmart. The online news report specifically read:

> Shreveport detectives need your help identifying two women who may be connected to a theft at Walmart. The theft happened back on Jan. 15 in the 1600 block of East Bert Kouns. According to the Shreveport Police Department, surveillance video showed two women walk into the store and take multiple items without paying for them. Crime Stoppers is offering a reward in this case. Anyone who can identify these women is urged to call (318) 673-7373 or use the P3tips app.

The same day, a KMSS social media post stated: "Do you recognize these women? They may be connected to a theft at Walmart and Shreveport detectives need your help identifying them." Both the online news report and the social media post were accompanied by the same photograph taken from Wal-Mart surveillance footage of the two unidentified women.

Crime Stoppers' press release similarly stated:

---

[1] Crime Stoppers is a community-supported nonprofit organization. Crime Stoppers provides a phone number for anonymous tips that is publicized on a regular basis by the media, which provides a cost-effective way for law enforcement to gather information on crime.

On January 15, 2021, Shreveport Police patrol officers were dispatched to the Walmart in the 1600 block of East Bert Kouns on reports of a theft. Upon arrival, officers learned two black female (*sic*) entered the business and committed a theft of multiple products. This incident was captured on the store's surveillance and a photo of the suspects has been extracted from the video in hopes of getting those individual (*sic*) identified. Crime Stoppers is offering a reward for information leading to the identifies and arrests of the person responsible for this crime. Please contact them at 318-673-7373 or via app at P3tips.

On or about February 9, 2021, Shanika Green ("Green") was notified by family members of the Crime Stoppers advertisement, and that she and her daughter were wanted on a charge of theft. Green contacted an attorney, who advised that she turn herself in to SPD. Green was charged by affidavit with the crime of theft under La. R.S. 14:67 and was ordered to appear in Shreveport City Court on April 19, 2021. Green was never arrested, and no charges were filed against her minor daughter.

Green appeared in Shreveport City Court on April 19, 2021, entered a plea of not guilty, and moved for a continuance on the ground that her daughter was a material witness and was not available because she was out of state. The motion for continuance was granted and the case was reset for trial on August 4, 2021. Green appeared in the Shreveport City Court on August 4, 2021, and the case was again continued at the request of the city prosecutor because Wal-Mart did not produce a witness to testify. The court reset the case for trial on September 1, 2021. Green appeared in the Shreveport City Court on September 1, 2021, and the case was again continued at the request of the city prosecutor because Wal-Mart did not produce a witness to testify. Finally, Green appeared in the Shreveport City Court again on November 5, 2021. Again, Wal-Mart did not produce a

representative to testify on its behalf, and the city prosecutor moved to dismiss the case. The trial court granted the city prosecutor's motion to dismiss the case in open court.

In a subsequent petition filed in the First Judicial District Court on January 12, 2022, Green asserted a defamation claim against Wal-Mart,[2] KMSS, and Crime Stoppers, alleging that Wal-Mart's actions and the charges filed against her in Shreveport City Court damaged her reputation and hindered her ability to acquire employment. Green alleged that she suffered severe mental anguish and pain because of the criminal charges filed against her. Green asserted that she incurred special damages in attorney fees and costs in the amount of $700 to defend herself in the Shreveport City Court prosecution instituted by Wal-Mart.

In response, Crime Stoppers filed a peremptory exception of no cause of action, asserting that Green's petition failed to state a cause of action because she did not allege any malice or fault on the part of Crime Stoppers, and noted that it reasonably relied on information provided by law enforcement authorities when it published its online news report.

Days later, pursuant to La. C. C. P. art. 971, KMSS filed a special motion to strike and peremptory exception of no cause of action. KMSS asserted that Green's claims failed to state a cause of action and should be stricken and dismissed with prejudice. KMSS likewise argued that it relied on statements made by law enforcement, that the statements in the news report were true because they accurately reported statements made by law enforcement, and Green failed to allege that she or her minor daughter were

_____

[2] Only the claims asserted against KMSS and Crime Stoppers are before this Court on appeal.

4

named or even depicted in the news report. KMSS also requested that the court grant an award of attorney fees and costs incurred in bringing the special motion to strike, in accordance with the provisions of La. C. C. P. art. 971.

The district court granted Crime Stoppers' and KMSS's exceptions of no cause of action. The trial court ordered that KMSS's special motion to strike was deferred. However, the trial court also issued a ruling allowing Green to file an amended petition. Green timely filed her first supplemental and amended petition; in response, both parties again asserted peremptory exceptions of no cause of action, and KMSS renewed its special motion to strike.

A hearing was held on KMSS's renewed special motion to strike, and both KMSS's and Crime Stoppers' exceptions of no cause of action. The trial court subsequently signed a judgment prepared by KMSS, with consent of all parties, sustaining KMSS's exception of no cause of action, granting the special motion to strike, and dismissing all claims set forth in Green's petition and amended petition against KMSS. The judgment further ordered that pursuant to La. C. C. P. art. 971(B), "KMSS shall be awarded reasonable attorneys' fees and costs to be paid by [Green] in an amount to be determined upon application by KMSS." The trial court signed a separate judgment prepared by Crime Stoppers, with consent of all parties, sustaining Crime Stopper's exception of no cause of action, and dismissing all of Green's claims and causes of action with prejudice. Green now appeals.

5

## DISCUSSION

Green asserts four assignments of error.

1. **The Trial Court erred as a matter of law when it sustained the exception of no cause of action filed by KMSS in this proceeding.**

2. **The Trial Court erred as a matter of law when it sustained the exception of no cause of action filed by Crime Stoppers in this proceeding.**

3. **The Trial Court erred as a matter of law when it granted the special motion to strike filed by KMSS in this proceeding.**

4. **The Trial Court erred as a matter of law when it dismissed all of the Plaintiff's claims against KMSS and Crime Stoppers in this proceeding with prejudice.**

As Assignments of Error 1, 2, and 4 relate to the trial court sustaining the exceptions of no cause of action by KMSS and Crime Stoppers, resulting in the dismissal of all claims against them, we will consider these assignments of error together:

*Peremptory Exception of No Cause of Action*

The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. *Ramey v. DeCaire*, 03-1299 (La. 3/19/04), 869 So. 2d 114. La. C.C.P. art. 931 states that no evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. Therefore, the court reviews the petition and accepts well-pleaded allegations of fact as true. *Ramey*, *supra*. All doubts are resolved in favor of the sufficiency of the petition to afford litigants their day in court. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876. The issue at

6

the trial of the exception of no cause of action is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Ramey*, *supra*.

An appellate court's review of a trial court's ruling sustaining an exception of no cause of action is *de novo* because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. *Grayson v. Gulledge*, 55,214 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1133, *writ denied*, 23-01437 (La. 1/10/24), 376 So.3d 847.

*Defamation*

The tort of defamation is the invasion of a person's interest in his or her reputation and good name. *Bradford v. Judson*, 44,092 (La. App. 2 Cir. 5/6/09), 12 So. 3d 974, *writ denied*, 09-1648 (La. 10/16/09), 19 So. 3d 482. Four elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Kennedy v. Sheriff of East Baton Rouge*, 05-1418 (La. 7/10/06), 935 So. 2d 669. The fault requirement is generally considered to be malice, actual or implied. *Id*.

If even one of the elements for a defamation claim is absent, the cause of action fails. *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832.

A statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person

to contempt or ridicule. *Kennedy*, *supra*; *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So. 2d 129.

In Louisiana, defamatory words have traditionally been separated into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning. *Kennedy*, *supra*; *Costello*, *supra*. "Words which expressly or implicitly accuse another of criminal conduct . . . are considered defamatory *per se*." *Kennedy*, 05-1418 at p. 5, 935 So. 2d at 675.

In determining whether a given communication is defamatory, the court must determine whether the communication was reasonably capable of conveying the particular meaning or innuendo ascribed to it by the plaintiff and whether that meaning is defamatory in character. *Johnson v. Purpera*, 20-01175 (La. 5/13/21), 320 So. 3d 374. That is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. *Sassone v. Elder*, 626 So. 2d 345 (La. 1993).

As stated by the Louisiana Supreme Court in *Johnson v. Purpera*, *supra*:

> The challenged words must be construed according to the meaning that will be given them by reasonable individuals of ordinary intelligence and sensitivity, and they must be understood in the context in which they were used and in the manner shown by the circumstances under which they were used. Ultimately, the question posed to the court is whether a particular statement is objectively capable of having a defamatory meaning, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener.

Citations omitted.

A defamatory word must refer to an ascertained or ascertainable person, and that person must be the plaintiff. *McConathy v. Ungar*, 33,368 (La. App. 2 Cir. 8/23/00), 765 So. 2d 1214, *writ denied*, 00-2678 (La. 11/17/00), 774 So. 2d 982 (citing *Hyatt v. Lindner*, 133 La. 614, 63 So. 241 (1913)).  If the word used contains no reflection on a particular individual, no averment or innuendo can make it defamatory as an innuendo cannot make the person certain which was uncertain before.  *Id.*

Because the defamation action is personal to the party defamed, this general rule precludes a person from recovering for a defamatory statement made about another, even if the statement indirectly inflicts some injury upon the party seeking recovery.  *Johnson v. KTBS, Inc.*, 39,022 (La. App. 2 Cir. 11/23/04), 889 So. 2d 329, *writ denied*, 04-3192 (La. 3/11/05), 896 So. 2d 68.

There are three types of defamatory statements that are actionable in Louisiana: (1) false defamatory statements of fact; (2) statements of opinion which imply false defamatory facts; and (3) truthful statements which carry a defamatory implication. *Johnson v. Purpera*, *supra*.  The third category has been referred to as defamation by implication or innuendo.  *Id.*  This type of defamation happens "when one publishes *truthful* statements of fact, and those *truthful* facts carry a false, defamatory implication about another." *Fitzgerald v. Tucker*, 98-2313, p. 12 (La. 6/29/99), 737 So. 2d 706, 717.  It occurs when a defamatory meaning can be insinuated from an otherwise true statement; however, it is actionable only if the statements regard a private individual and private affairs.  *Johnson v. Purpera*, *supra*.

9

Crime is not a matter of private affairs; rather, it is a matter of public concern. "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions, however, are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029, 1045, 43 L. Ed. 2d 328 (1975). La. R.S. 15:477.1 provides protections from disclosure of certain information conveyed by the public to a crime stopper organization, such as Crime Stoppers, a "private, nonprofit organization that accepts and expends donations for rewards to persons who report to the organization information concerning criminal activity and that forwards the information to the appropriate law enforcement agency." La. R.S. 15:477.1(A)(1).

Green argues that the trial court erred as a matter of law when it found KMSS and Crime Stoppers were entitled to rely upon and publish defamatory statements transmitted to them by the SPD. Green also argues that KMSS's and Crime Stoppers' reports exceeded the scope of the qualified privilege for relying upon an official report from law enforcement, and therefore waived any protection which might have been afforded to them by that privilege. Green asserts that the online posts by Crime Stoppers and KMSS went beyond merely stating that SPD was investigating a theft, but unequivocally stated that Green and her daughter stole items from Wal-Mart. Green contends that even if the press release can be considered an official report of SPD, it was not actually prepared by SPD, but by Wal-Mart. Green contends that SPD's failure to review or

verify the contents of that press release render it unreliable as an official report.

The record shows that these assertions are simply not supported by the facts contained in the record. The record clearly establishes that neither Crime Stoppers nor KMSS stated that Green committed a theft at Wal-Mart. We find that an analysis of the issue of qualified privilege is unnecessary on appeal, as Green wrongly attempts to impute the actions of Wal-Mart's loss prevention department and its investigation into a theft at its store to the online news reports published by KMSS and Crime Stoppers. This Court has found that when the media is furnished arrest information from an authorized police source, it is under no obligation to verify from other sources the information so furnished, unless it has knowledge which would make it aware further research was necessary to insure the veracity of the information. *Lovett v. Caddo Citizen*, 584 So. 2d. 1197 (La. App. 2 Cir. 1991). Further, when a publisher of a news story relies upon a police report, the publisher will not be held liable for defamation, even if the information in the report is inaccurate. *Thomas v. City of Monroe*, 36,526 (La. App. 2 Cir. 12/18/02), 833 So. 2d 1282. Regarding Crime Stoppers specifically, La. R.S. 15:477.1 imagines the important role the organization plays in the area of public concern. If this Court imposed liability on Crime Stoppers for publishing the press release SPD provided, law enforcement would lose a vital means of receiving tips on criminal activity through the anonymity and financial compensation Crime Stoppers provides. Finally, Green has not been able to establish falsity or malice. Only false statements can be defamatory, and we do not find that any false information about Green was contained in the online

11

news reports at issue. As noted above, the statements did not accuse Green or her daughter of theft and did not even name or identify Green or her daughter as the individuals in the photo. The language used in the statements by both KMSS and Crime Stoppers was crafted to specifically provide that the Shreveport Police Department was investigating a theft at Wal-Mart and needed assistance from the public in identifying *suspects*. The online news reports unambiguously indicated that it was reporting on information relayed to them by SPD, and never assumed Green's guilt. Green completely fails to establish any of the elements for a claim of defamation against KMSS and Crime Stoppers because she fails to meet her burden of establishing that the statements published by KMSS and Crime Stoppers were false. Accordingly, we find these assignments of error are without merit. The trial court did not err in sustaining the exceptions of no cause of action filed by both KMSS and Crime Stoppers and was correct in dismissing all of Green's claims against them.

Green's final assignment of error, numbered above as her third assignment of error, relates to KMSS's special motion to strike:

> **3. The Trial Court erred as a matter of law when it granted the special motion to strike filed by KMSS in this proceeding.**

*Special Motion to Strike*

The legislature enacted La. C.C.P. art. 971 as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. *Quinlan v. Sugar-Gold*, 53,348 (La. App. 2 Cir. 3/11/20), 293 So. 3d 722, *writ denied*, 20-00744 (La. 10/6/20), 302 So. 3d 536.

12

La. C.C.P. art. 971 states in part:

A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
. . . . .
B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
. . . . .
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
. . . . .
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Section 2 of Act 734 of 1999, which enacted art. 971, stated that the Louisiana Legislature had found a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." The lawsuits targeted by art. 971 are referred to as strategic lawsuits against public participation, or SLAPP. *Hatfield v. Herring*, 54,048 (La. App. 2 Cir. 8/11/21), 326 So. 3d 944, *writ denied*, 21-01377 (La. 12/7/21), 328 So. 3d 424.

In *Wainwright v. Tyler*, 52,083, pp. 16-17 (La. App. 2 Cir. 6/27/18), 253 So. 3d 203, 217, this court discussed the burden of proof on the art. 971 motion:

Our appellate courts interpret this statute as requiring a two-part, burden-shifting analysis. In cases where right of petition and free speech activities form the basis of the claims, the mover must first establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. If the mover makes a *prima facie* showing that his comments were constitutionally protected and in connection with a public issue, the burden shifts to the plaintiff to demonstrate a probability of success on the claim. In cases where more than one claim is alleged in the petition, the courts examine the probability of success of each claim individually. If the plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail.

We agree with the trial court and find that KMSS made a *prima facie* showing that the content of the news report was an act in furtherance of their rights to free speech and in connection with a public issue. The commission of a crime and the police investigation of that crime are matters of legitimate public concern.

The burden then shifts to Green to demonstrate a probability of success on her claims. She is unable to satisfy her burden, because her claims could not withstand the exceptions of no cause of action. We find the trial court did not err in granting KMSS's special motion to strike. The trial court correctly awarded attorney fees to KMSS, pursuant to La. C. C. P. art. 971, but did not specify an amount of the award. Finding KMSS to be entitled to such attorney fees, we remand this matter to the trial court for further proceedings as may be necessary to determine the amount of an attorney fee award to KMSS, with instructions to also consider such attorney fees incurred in defending this appeal.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed and remanded for further proceedings to fix the amount of attorney fees to which KMSS is entitled, pursuant to La. C. C. P. art. 971. Costs of this appeal are assigned to Shanika Renee Green.

**AFFIRMED; REMANDED WITH INSTRUCTIONS**