SUSAN M. CHEHARDY, Judge.
1 aThis is a lawsuit by an employee of the Harahan Police Department for intentional infliction of emotional distress and abuse of process. The plaintiff appeals a judgment that dismissed his claims on exceptions of no cause of action. We affirm.
In June 2004 Joseph Almerico filed suit against Peter Dale, individually and in his capacity as Chief of Police of the City of Harahan, and the City of Harahan, Louisiana. The original petition alleges that Al-merico is a captain in the Harahan Police Department, with the title of Operations Commander. He was first employed by the Harahan Police Department as a reserve officer, then was hired in 1992 in the classified civil service position of Police Officer, progressing by the required civil service examinations successively through the positions of Sergeant, Lieutenant, and then Captain, all classified positions within the Police Department.
It alleges further that after defendant Peter Dale (“Dale”) was elected to the position of Chief of Police of the City of Harahan in November 2002, Dale made it clear to Almerico and others that he did not want Almerico to remain as an employee of the Police Department. The petition states that Dale treated Almerico with disrespect and that Dale told others he wanted to get the former police chiefs “people” out of the Police Department.
|sThe petition alleges that on April 15, 2004, while Almerico was at a funeral home making arrangements for his father’s funeral, Dale called him and instructed him to come into the office. When Almerico complied, Dale informed him that he was being placed on administrative leave. Approximately two months later, Dale terminated Almerico from his employment for alleged violations of civil service rules.
Almerico initiated an appeal pursuant to the civil service rules. The Harahan Municipal Fire and Police Civil Service Board (“Board”) subsequently found unanimously that Dale’s action was not taken in good faith for cause. The Board ordered that Almerico be immediately reinstated and that he be paid his regular salary retroactive to the date of his wrongful termination.
The petition asserts that Dale either knew or should have known that Almerico had not committed the alleged violations, and that the investigation and predetermination hearings were essentially shams, conducted in bad faith for the sole purpose of terminating Almerico.
Further, it alleges, the day after Almeri-co was reinstated to his employment,
Dale took him to lunch and asked him if plaintiff intended to sue Dale. Dale told plaintiff that if the lunch went well, he would make plaintiff Operations Commander, but that if the lunch did not go well, he was going to create a position to have plaintiff guard the maintenance shed, or would have him sit on the desk.
Thereafter, the petition alleges, Dale made Almerico Operations Commander, but the position has been little more than a title: “Dale has undertaken to undermine plaintiffs authority, impose unrealistic *589 deadlines, and generally make plaintiff uncomfortable, all in an effort to retaliate against plaintiff and/or to make him leave his employment.”
|4The petition alleges that Dale’s actions constituted malicious prosecution, abuse of process, intentional and/or negligent infliction of emotional distress, and slander. Almerico seeks recovery for unnecessary attorney fees incurred and damages for “extreme emotional distress and anguish, embarrassment, humiliation, loss of enjoyment of life, insecurity, anxiety, and damage to reputation” suffered as a result of Dale’s actions.
The defendants brought exceptions of no cause of action. The trial court granted the exceptions as to the claims for malicious prosecution and negligent infliction of emotional distress. The court converted the exceptions of no cause of action as to intentional infliction of emotional distress, defamation, and abuse of process to exceptions of vagueness, and ordered the plaintiff to amend his petition.
Almerico filed a Supplemental And Amending Petition that added Paragraphs '20a, 20b, 20c, and 20d. In it he states, “Each of the following incidents describes an act or acts of deliberate and intentional infliction of emotional distress” upon plaintiff by Dale, acting individually and/or in his official capacity as Chief of Police of the City of Harahan.”
Subparagraph A elaborates on the incident in which Dale called Almerico away from planning his father’s funeral. Almer-ico “had previously expressed to Dale that he was very close to his father, and Dale had told plaintiff that his father was also sick, and that they (Dale and his father) were also very close.” Dale had granted him emergency leave for April 15, the day on which he was to plan his father’s funeral, yet on that day Dale’s secretary left a message on Almerico’s cell phone telling him Chief Dale needed to see him immediately to discuss something important.
When Almerico went to see Dale, Dale stated that he was being placed on administrative leave,' effective immediately.
| sDale gave no specific reasons as to the basis of this decision or the nature of the investigation or charges against plaintiff. .. .Further, although other employees had been investigated for various offenses during Dale’s administration, plaintiff was the only employee as of • that time to be placed on administrative leave during the investigation of him.
Subparagraph B alleges that Almerico endured extreme stress and anxiety for approximately six weeks because he did not know why he had been placed on administrative leave. Further, “Dale’s failure to provide plaintiff with even the most basic description of the nature or purpose of the investigation against him was deliberate and willful, done with the specific intent of inflicting emotional distress and anxiety upon plaintiff.”
Subparagraph C asserts thát despite Al-merico’s reinstatement by the Board,
Dale,.. continues to this day to deliberately, willfully and intentionally inflict emotional distress upon plaintiff. The acts described herein may appear less significant when viewed as independent, isolated incidents; however, plaintiff submits that the acts must be considered as part of a course and pattern of conduct which, when taken as a whole, unequivocally support plaintiffs allegations of intentional infliction of emotional distress.
The Supplemental and Amending Petition then lists six sub-subparagraphs that relate the following:
Despite having the position of “Operations Commander,” Almerico was required *590 to share a small office, including the desk and computer, with another officer for almost five months after being returned to duty. Dale failed to provide him with a dress uniform, such as was provided to the other captains in the Harahan Police Department, and Dale’s response to his repeated requests was “I’ll look into it,” but nothing was done.
Further, almost two months elapsed from the time of Almerieo’s return until he received his police car back. Ultimately he was required to go on his own to the | fiperson to whom the ear had been reassigned and ask him to give it back. Dale also failed to act on Almerico’s repeated requests for reimbursement for equipment Almerico had added to his police car at his own expense prior to his being placed on administrative leave.
In addition, after Almerico was reinstated Dale never returned his commission to him, which Almerico had been required to turn in when he was placed on administrative leave. (The commission is a two-piece card with the officer’s photograph, setting forth his blood type, his date of birth, and his name.) Dale told Almerico the commission was missing, but no report was made nor internal investigation invoked to determine what happened to it.
Finally, after Almerico was reinstated, Dale informed him he would be required to fill in for the nighttime supervisor, Lt. Chris Fanguy, when that officer was off. The nighttime supervisor is required to work from 5:00 p.m. to 1:00 a.m. Almerico alleges that Dale created the position of nighttime supervisor “with the specific intention of inflicting emotional distress upon him by creating a method by which he could require plaintiff to work nights, knowing that plaintiff was awaiting the birth of his first child, and further by punishing Fanguy who Dale knows will corroborate many of plaintiffs allegations.”
‘ Paragraph 20b alleges that Dale’s intention to inflict emotional distress upon Al-merico was motivated by Dale’s desire to engage in the prohibited act of ridding his office of Civil Service protected employees who played significant roles in the administration of the prior Police Chief. Paragraph 20b also alleges that Dale made comments relating to Almerico’s having a campaign sign on his lawn, and that Dale asked the fire chief whether he could fire an employee for having lied on his employment application. It states the only allegation pursued at the Civil 17Service hearing was whether plaintiff had lied on his employment application to be a reserve officer with the Harahan Police Department more than ten years earlier.
Paragraph 20c asserts that the entire investigation and resulting wrongful discharge constituted an abuse of process by Dale, acting individually and in his official capacity. Specifically, it alleges that Dale promised another person a “Peter Dale commission” in exchange for a statement that Almerico had engaged in prohibited campaigning for the former police chief. It states that the person did not receive the promised commission and he subsequently denied he had knowledge of Almerico doing anything prohibited. Further, although Dale subpoenaed that person to testify at the Civil Service hearing, Dale released him from the subpoena immediately prior to the hearing, “resulting in Dale’s complete abandon of his claim of prohibited political activity by plaintiff.”
Paragraph 20c asserts further,
Dale, whose sole other allegation against plaintiff was that he had lied on his employment application more than ten years earlier, failed to investigate or follow up on plaintiffs documented and *591 stated explanation given in the pre-ter-mination hearing, for the alleged ‘lie,’ which failure constituted a deliberate abuse of the process initiated to investigate plaintiff.
Finally, Paragraph 20d alleges that as a result of Dale’s “continuous harassment and humiliation of the plaintiff,” Almerieo has developed a psychological disorder with symptoms of depression and anxiety so severe as to require medical treatment, medication, and an extended leave of absence from his employment, which also made it difficult for him to assist in preparation and development of the lawsuit, and in relating to and enjoying his time with his family and friends.
Almerieo abandoned the slander claim made in the original petition by failing to amend the petition in that respect.
|sThe defendants filed exceptions of no cause of action to the petition as supplemented and amended. The trial court granted the exceptions on the causes for intentional infliction of emotional distress and abuse of process, dismissing the plaintiffs claims.
In oral reasons for judgment, the trial court stated:
[TJhere is no question that Chief Dale’s conduct might be viewed by a reasonable human being as being callous, maybe even steamily [sic] callous. However, intentional infliction of emotional distress requires much, much more. Therefore, pursuant to White, Nicholas, and Singleton,... I am granting the exception of no cause of action. The allegations of the pleading accepted as true do not rise to the requirements of those cases.
With regard to the abuse of process claim, likewise I am granting the exception of no cause of action, because if I accept the pleading as true, and I accept the bribe business as true, there was no impact. The witness didn’t testify, and the choice of process is not abuse of process, therefore the exception is granted.
On appeal, Almerieo asserts the trial court erred in granting the exceptions of no cause of action because “the District Court accepted' defendant’s version of plaintiffs pleading rather than giving weight to plaintiffs presentation of the facts.” His arguments are directed solely to the claims for intentional infliction of emotional distress and abuse of process.
STANDARD OF REVIEW
No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La.C.C.P. art. 931. The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at the trial of the exception is | ^whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Id.
We examine the petitions here in light of that rule.
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991).
*592 Thus, in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

Id.

“The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.” White, 585 So.2d at 1209. Thus, there is no liability for “mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.” Id. “Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort....” Id.
The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests ....
On the other hand, conduct which may otherwise be extreme and outrageous, may be privileged under the | mrircumstances.... Thus, disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.
White, 585 So.2d at 1210.
The key is that “the distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme.” Id.
Liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like. [Citations and footnote omitted.]
White, 585 So.2d at 1210.
Louisiana’s jurisprudence has limited the cause of action for intentional infliction of emotional distress in a workplace setting to cases which involve a pattern of deliberate, repeated harassment over a period of time. Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017, 1026. The distress suffered by the employee must be more than a reasonable person could be expected to endure. Nicholas, 765 So.2d at 1027. Moreover, the employer’s conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry. Id.
Almerico argues that the district court is required to accept his pleadings as true and to resolve reasonable doubt of the sufficiency of his pleadings to maintain the action and afford him the opportunity to present evidence at trial. He contends he has alleged sufficient facts to maintain his claim of intentional infliction of | n emotional distress and, given the oppor *593 tunity to present evidence under his pleadings, he can prove this claim.
The defendants assert that the dismissal of the plaintiffs claims should be affirmed because the plaintiff cannot establish three essential elements of an intentional infliction of emotional distress claim: (1) extreme and outrageous conduct; (2) that Chief Dale knew or should have known that a seasoned police officer would suffer severe emotional distress from his actions; and (3) that the plaintiff suffered severe emotional distress as a result of the alleged actions.
Reviewing the allegations here in light of the jurisprudence — not only White and Nicholas, but also the cases from the circuit courts of appeal — we find no error in the trial court’s determination that the allegations in the petitions here do not rise to the level required to state a cause of action for intentional infliction of emotional distress.
ABUSE OF PROCESS
Almerieo argues the trial court erred in finding he failed to state a cause of action for abuse of process. The trial court reasoned that although Dale allegedly bribed a witness to testify falsely at the civil service hearing, the plaintiff sustained no damage because the witness never testified.
Almerieo contends, however, that for a law enforcement officer and civil service employee, “process” is not merely the civil service hearing in which an officer may appeal a disciplinary action (including termination); it also includes the investigative process mandated with minimum standards under the Police Officer’s Bill of Rights and the pre-determination hearing mandated by U.S. Supreme Court. In addition, he argues, it includes general requirements of civil service rules, in particular of La.R.S. 33:2561, that disciplinary action be taken in good faith and with cause.
h alienee, Almerieo argues, his allegations that “the investigation and pre-deter-mination hearings were essentially shams, conducted in bad faith for the sole purpose of terminating plaintiff,” and that “Dale twisted and forced and directed the entire procedure” by offering a potential witness a “Peter Dale commission” in exchange for a statement that the plaintiff had engaged in political campaigning, state a cause of action for abuse of process.
Almerieo contends it is immaterial that the witness’ testimony was not used in the civil service hearing, because it was used against him “in the process.” He argues there was abuse of process in that “no investigator ever took a statement from plaintiff or ever contacted him for questioning.”
The defendants assert the dismissal of the claim for abuse of process should be upheld because the allegations confirm the proper process for terminating an employee was followed. They contend that if the process is “employed for the purpose for which it was designed, that is, to redress of a legal wrong, the person who utilizes the legal process has committed no tort even though he may [have] had a vicious or vindictive motive.”
The elements of an abuse of process claim are an ulterior purpose and a willful act in the use of process not proper in regular conduct of proceeding. Costello v. Hardy, 02-1156, pp. 6-7 (La.App. 5 Cir. 3/25/03), 844 So.2d 212, 216. Abuse involves misuse of process already legally issued whereby a party attempts to obtain some result not proper under law. Id.
The “Police Officer’s Bill of Rights” statute, La.R.S. 40:2531, sets out minimum standards to apply whenever a law enforcement officer is under investigation *594 with a view to possible disciplinary action, demotion, or dismissal. That statute cannot be cited, however, as basis for an abuse of process claim.
|1sIn reviewing Louisiana cases on abuse of process, we find none in which the “process” part of the cause of action has been considered to be anything other than legal process, or court process. In particular, we find no cases in which “process” refers to' a civil service disciplinary matter that has not come within purview of a court proceeding. Rather, as stated in a seminal discussion of abuse of process by the First Circuit Court of Appeal,
[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ. It is malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attempted to be secured. [Emphasis added.]
Succession of Cutrer v. Curtis, 341 So.2d 1209, 1214 (La.App. 1 Cir.1976), writ denied, 343 So.2d 201 (La.1977).
Accordingly, the trial court was correct in finding that the petitions failed to state a cause of action for abuse of process.[1]
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellant.

AFFIRMED.

DALEY, J. concurs with reasons.

. We see no reason to order Almerico to amend his petition, for we do not believe the grounds for the exception can be removed by amendment. See La.C.C.P. art. 934. He already amended the petition once, in response to the granting of the exception of vagueness.